UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                          CASE NO.   8:08-CR-441-T-17MAP

PHILIP WILLIAM COON.

_____/


ORDER

This cause is before the Court on:

| | | |
|---|---|---|
| Dkt. 131 | Notice of Filing Statement of Stipulated and Disputed Facts |
| Dkt. 141 | Memorandum of Movants |
| Dkt. 143 | Response of Defendant Coon |
| Dkt. 144 | Evidentiary Hearing Brief of USA |
| Dkt. 152 | Notice of Filing - Report Concerning Victim Notification |
| Dkt. 153 | Request for Judicial Notice |
| Dkt. 162 | Movants' Response to Report Concerning Victim Notification |
| Dkt. 179 | Motion to Strike |
| Dkt. 183 | Amended Exhibit List - Government |
| Dkt. 185 | Fourth Amended Exhibit List - Movants |
| Dkt. 194 | Transcript (12/7/2009) |
| Dkt. 195 | Transcript (12/8/2009) |
| Dkt. 197 | Transcript (12/9/2009) |
| Dkt. 198 | Transcript (12/10/2009) |
| Dkt. 199 | Transcript (12/21/2009) |
| Dkt. 200 | Transcript (12/28/2009) |
| Dkt. 207 | Request for Judicial Notice |
| Dkt. 208 | Movants' Final Argument on Entitlement to Restitution |
| Dkt. 209 | Coast Bank Borrowers' Appendix to Final Argument |
| Dkt. 210 | Memorandum of Defendant Coon Regarding Investors' Entitlement to Restitution |
| Dkt. 211 | United States' Post-Evidentiary Hearing Brief and Proposed Findings of Fact and Conclusions of Law |
| Dkt. 212 | Movants' Rebuttal Argument on Entitlement to |

```
              Restitution
   Dkt. 213   Movants' Appendix
   Dkt. 214   Movants' Appendix
   Dkt. 215   Movants' Appendix
   Dkt. 216   Movants' Appendix
   Dkt. 217   Movants' Appendix
   Dkt. 218   Movants' Appendix
   Dkt. 219   Movants' Appendix
   Dkt. 220   Movants' Appendix
   Dkt. 221   Movants' Appendix
   Dkt. 222   Request for Judicial Notice
```

The Court conducted an evidentiary hearing in this case on December 7,8,9,10,21 and 28, 2009. By stipulation, the evidentiary hearing was limited to the issue of whether Movants, Coast Bank Borrowers, are entitled to restitution from Defendant Coon.

Movants, Coast Bank Borrowers, seek restitution for Movants' losses in connection with Movants' purchases of lot-home packages, which were financed with construction loans from Coast Bank.

I.  Evidentiary Issues

A.  Dkt. 153 Request for Judicial Notice

Movants Coast Bank Borrowers request that the Court take judicial notice of the mortgage foreclosure complaint filed in Charlotte County Circuit Court by First Bank, successor to Coast Bank, against Movant Janis Stewart, pursuant to Fed.R.Ev. 201(b)(2). The Court previously deferred ruling (Dkt. 160).

A judicially noticed fact must be one not subject to reasonable dispute in that it is either: 1) generally known in the territorial jurisdiction of the trial court; or 2) capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Ev. 201(b). The effect of taking judicial notice is to preclude a party from introducing contrary evidence, and, in effect, directing a verdict against that party as to the fact noticed.

A court may take judicial notice of a document filed in another court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." U.S. v. Jones, 29 F.3d 1549 (11th Cir. 1994) (citing Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992).

The Court **grants** the Request for Judicial Notice for the limited purpose of establishing that a mortgage foreclosure complaint was filed against Movant Janis Stewart in Charlotte County Circuit Court by First Bank, successor to Coast Bank.

B.  Dkt. 179    Motion to Strike

On December 28, 2009, Defendant Coon made an oral motion to strike the testimony of Movants' expert witness Dennis Black. Defendant Coon has withdrawn the motion to strike (Dkt. 210, p. 2). The Court **denies** the motion to strike as moot.

C.  Dkt. 207    Request for Judicial Notice
    Movants' Exhibits 74-78

Construction Compliance, Inc. was a builder who participated in the program offering qualified buyers lot-house packages with a fixed price of 90 percent of the appraised value and with no money down. (Dkt. 131, Ex. A, p. 2).

Movants, Coast Bank Borrowers, request that the Court take judicial notice of the following documents filed in the bankruptcy proceeding of Construction Compliance, Inc. ("CCI"), Case No. 8:07-BK-02650-CPM, pursuant to Fed.R.Ev. 201(b)(2): 1) Monthly Operating Reports of Debtor from 4/3/2007 to 5/20/2007; 2) Complaint of Construction Compliance, Inc. v. Coast Bank of Florida, Inc., et al.; 3) CCI's Joint Plan of Liquidation; 4) Order Confirming CCI's Joint Plan of Liquidation; 5) CCI's Post Confirmation Quarterly Operating Report for 7/1/2009 to 9/30/2009.

A court may take judicial notice of a document filed in another court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." U.S. v. Jones, 29 F.3d 1549 (11th Cir. 1994) (citing Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992).

1.  Exhibit 74 - Debtor's Monthly Operating Reports

Movants have requested that the Court take judicial notice of the accounts receivable schedule included in Debtor's Monthly Operating Report for the period 4/3/2007 to 5/20/2007 to show the "overall mess left by CCI" and the status of each defaulted CCI home construction contract. (Dkt. 208, p. 17).

Movants argue that the imposition of the additional point caused proximate harm to the borrowers. Movants argue that Movants' Victim Impact Statements ("VIS") show that 65 were left with a bare lot and 71 were left with a partially-completed home (Dkt. 208, p. 17).

4

The Court understands that Movants argue that Defendant Coon's conduct caused CCI to have less money available for Movants' homes to be completed, therefore making it less likely that the homes would be completed. However, establishing the presence of a risk is not the same as establishing proximate causation. Since the issue of proximate cause is a disputed issue, the Court cannot take judicial notice of the allegations within the documents for their truth. The Court will rely on the testimony of the lay and expert witnesses and other evidence offered in this case as to the issue of proximate cause.

2. Exhibit 75 - Complaint

Movants request that the Court take judicial notice of an adversary proceeding filed by Construction Compliance, Inc. against Coast Bank, American Mortgage Link, Solutions Processing and John Miller. In Movants' Final Argument on Entitlement to Restitution (Dkt. 208, p. 13), Movants argue that the increased points starved Movants' loans of needed construction funds.

The Court cannot take judicial notice of a document filed in another court for the truth of the matters asserted. To the extent that Movants argue for the presence of a conspiracy involving other participants besides Defendant Coon and Mr. Miller, and argue that the filings in Case No. 8:07-BK-02650-CPM support Movants' theory, the Court will take judicial notice of the documents only to establish the fact that a complaint was filed and allegations were made. In other words, the Court does not accept the complaint to which Movants refer as circumstantial evidence of a larger conspiracy involving other persons or entities not named in the Information filed in the case before

the undersigned. The Government and Defendant Coon dispute the existence of such a conspiracy, and, for this reason alone, it is not appropriate for the Court to take judicial notice of allegations of the complaint for their truth.

3. Exhibit 76 - Joint Plan of Liquidation
4. Exhibit 77 - Order Confirming Joint Plan
5. Exhibit 78 - Post Confirmation Quarterly Operating Report

Movants do not specify the reason for Movants' request for judicial notice of the above Exhibits. The Court assumes that the reason is additional support for Movants' theory of an over-arching conspiracy.

After consideration, the Court **grants** Movants' Request for Judicial Notice only to establish that the documents were filed in CCI's bankruptcy proceeding.

D. Dkt. 222 Request for Judicial Notice

Movants, Coast Bank Borrowers, request that the Court take judicial notice of the document filed in the bankruptcy proceeding of Construction Compliance, Inc., pursuant to Fed.R.Ev. 201(b)(2): 1) Order Abating Liquidating Trustee's Omnibus Objection to Claims, Second Omnibus Objection to Claims, Third Omnibus Objection to Claims, Fourth Omnibus Objection to Claims, Objection to Claims of Timothy and Cynthia Walsh, Objection to Claims of Farrukh and Sheila Zaida and Objection to Claims of James Prowak.

The above document was filed after the parties and Movants filed their post-hearing memoranda. The Court assumes that

Movants have filed this Request for Judicial Notice in response to the Court's question during the evidentiary hearing as to the current status of CCI's bankruptcy case.

The Court **grants** the Request for Judicial Notice only to establish that the document was filed in CCI's bankruptcy proceeding.

E. Government Exhibits Series (l) and (m)

The Court heard oral argument regarding admission of Government Exhibits Series (1), Settlement Agreement or other disposition package, and (m), Victim Impact Statements ("VIS"), on December 28, 2009. The Court deferred ruling (Dkt. 178).

1. Series (l) - Settlement Agreements or Other Disposition

The Government has offered the "workout agreements" entered into between First Bank, successor to Coast Bank, and borrowers into evidence.

Movants object to the admission into evidence of the workout agreements because the events are remote in time from Movants' losses. Movants argued that Defendant Coon's conduct took place between 2004 and 2006, and the workout agreements were entered into after First Bank acquired Coast Bank in 2007. Movants argue that the "skimmed point" could not have been included in the workout agreements in that the criminal charges against Defendant Coon were not filed until 2008.

Defendant Coon objects on the basis of relevance. The parties and Movants agreed to a bifurcated proceeding. The only issue before the Court at this time is the entitlement to restitution. The evidentiary hearing did not involve the separate issue of the specific amount of restitution to which each borrower may be entitled.

After consideration, the Court **denies** the motion to admit the Series (l) documents into evidence without prejudice, as the documents are related to the determination of specific amounts of loss, which is beyond the scope of the issue which the Court is considering.

2. Series (m) - Victim Impact Statements ("VIS")

The Government has offered the VIS at the request of Movants, and does not vouch for the contents of the VIS. The Government does not object to the admission of the VIS. The Government argued that the HUD-1 for each borrower provides a starting point for determination of the amount of a borrower's loss. Where the VIS includes statements such as "the builder did not pay the closing costs," the Government has considered the statement to be a legal conclusion rather than a statement of fact.

The Government used its Victim Notification System ("VNS")to provide notice to Coast Bank borrowers or, if represented, borrowers' counsel, of their potential victim status, CVRA rights, and the U.S. Attorney's Office website (Dkt. 252, p. 9). On November 13, 2009, the Government notified the Coast Bank borrowers of the evidentiary hearing scheduled for December 8,

Case No. 8:08-CR-441-T-17MAP

2009 via VNS.  The VNS notice advised the Coast Bank borrowers that if they intended to submit a Victim Impact Statement, they had to do so no later than November 20, 2009.  Some borrowers submitted Victim Impact Statements with little or no documentation.  Some borrowers did not submit Victim Impact Statements.  The Government subpoenaed additional supporting information from First Bank.

Movants submitted Victim Impact Statements ("VIS") to the Government.  Movants' VIS include the amount of restitution requested, a "builder default scenario," the resolution of the loan (refinanced, foreclosed with deficiency judgment, paid off, etc.) and a resolution of the property (sold "as is," completed then sold home, completed home but still retain, lot only but still retain, etc.).

Movants acknowledge that Movants' VIS are not offered as proof on issues addressed at the evidentiary hearing, including specific statements to which objections were raised.  Defendant Coon objected to statements within the VIS, such as Movants' statements "the skimmed point was funded from my loan," and "the builder did not pay the skimmed point."

The Court notes that some local Movants appeared and testified at the evidentiary hearing.  Movants argue that the Victim Impact Statements should be considered by the Court because the VIS were the only practical way for the bulk of the movants to submit proof of their claim.  Movants argue that Defendant Coon had the opportunity to refute the VIS, and the VIS bear "minimal indicia of reliability."  U.S. v. Hairston, 888 F.2d 1349 (11th Cir. 1989).

9

To the extent that the VIS show that the transactions at issue were  substantially similar, the Court **grants** the Motion in part.  The Court notes that VIS 10, Zanuel Johnson, is an atypical transaction.  To the extent that the Government offers the VIS to establish entitlement to a specific amount of restitution, it is not necessary for the Court to rule on this issue before ruling on the threshold issue of entitlement to restitution.   The Court therefore **denies** the Motion in part without prejudice.

F.  Admissibility of Deposition Transcripts
    Movants' Exhibits 72, 73

Witness Jesse Brown Battle, III testified at the evidentiary hearing.  (Dkt. 194, pp. 268-294; Dkt. 195, pp. 6-125).  On cross-examination, Movants' counsel posed questions to Mr. Battle, and used Exhibits 72 and 73 to refresh Mr. Battle's recollection (Dkt. 195, pp. 40-49, 59-60, 72-75, 77-8, 101-102, 107-109).

Movants request that the transcripts be admitted into evidence.  Movants argue that hearsay evidence may be considered in determining a sentence of restitution, as long as the defendant is given an opportunity to refute the evidence, and the evidence bears minimal indicia of reliability.   U.S. v. Hairston, 888 F.2d 1349 (11th Cir. 1989).

Defendant Coon objects to the admission of the deposition transcripts into evidence (Dkt. 210, pp. 31-2, n. 17). Defendant Coon argues that the admission of transcripts from another proceeding is permitted when the witness is unavailable, under Fed.R.Ev. 804(a), and only when the opposing party "had an

opportunity and similar motive to develop the testimony by direct, cross or redirect examination." See Fed.R.Ev. 804(b)(1). Defendant Coon also challenges the indicia of reliability, and further argues that, at the evidentiary hearing, Movants did not indicate what specific portion of the deposition on which Movants intended to rely. Defendant Coon further argues that Movants do not specify Mr. Battle's memory lapses.

Mr. Battle appeared to testify at the evidentiary hearing, and Movants had a full opportunity to question the witness. Movants questioned the witness about many issues involving specific details of the background of CCI, how CCI conducted its business, and the financial affairs of CCI. When Mr. Battle testified that he could not recall, Movants used the prior depositions to refresh Mr. Battle's recollection. The depositions were not used to impeach Mr. Battle's testimony during the evidentiary hearing. If the depositions had been used to impeach the testimony of Mr. Battle at the evidentiary hearing, the depositions still could not be considered as substantive evidence. Mr. Battle's testimony at the hearing is the evidence, not the depositions.

At the evidentiary hearing, the Court questioned Mr. Battle directly (Dkt. 195, pp. 120-125) and stated the Court's concern with the status of the bankruptcy proceedings, and whether inconsistent positions were taken in Bankruptcy Court. (Dkt. 195, pp. 221-224).

After consideration, the Court **denies** Movants' request to admit the depositions into evidence.

11

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The issue the Court must determine is Movants' entitlement
to restitution from Defendant Coon for Movants' pecuniary losses.
The Court has reviewed the transcript of the evidentiary hearing
(1300 pages). After consideration of the testimony, both lay and
expert, the exhibits, the parties' and Movants' stipulation, and
arguments of counsel, the Court makes the following findings of
fact and conclusions of law. To the extent that any of the
findings of fact might constitute conclusions of law, they are
adopted as such. To the extent that any legal conclusions
constitute a finding of fact, they are adopted as such.

II.  Findings of Fact

1.    The Information (Dkt. 1) in this case charges Defendant
Coon with conspiracy to commit: 1) wire fraud and thereby to
deprive Coast Bank of Florida of the intangible right of honest
services, in violation of 18 U.S.C. Secs. 1343 and 1346; and 2)
money laundering, in violation of 18 U.S.C. Sec. 1957.

2.    Defendant Coon entered into a plea agreement on October
8, 2008 (Dkt. 3), in which Defendant Coon pleaded guilty to Count
One of the Information.

3.    The Plea Agreement contains a Factual Basis which sets
out in detail the conspiracy carried out by Defendant Coon and a
co-conspirator, commencing in late 2004, which the Court
incorporates by reference. The Factual Basis (Dkt. 3, p. 19)
includes the following statements:

> The scheme gave the defendant incentive to
> deal with AML, which resulted in Coast having
> a higher concentration of loans in one
> particular area with one particular builder
> than was prudent.  The scheme also exposed
> Coast Bank to the risk of litigation brought
> by one or more of the participants in the
> residential development/home loan program
> from which the defendant procured the illicit
> proceeds.  The defendant reasonably should
> have foreseen that Coast might suffer an
> economic harm as a result of his breach of
> fiduciary duty.

4.    As to restitution, the plea agreement provides (Dkt. 3, p.

12):

### 1.   Restitution, Special Assessment and Fine

> The defendant understands and agrees that the
> Court, in addition to or in lieu of any other
> penalty, <u>shall</u> order the defendant to make
> restitution to any victim of the offense,
> pursuant to 18 U.S.C. Sec. 3663A, for all
> offenses described in 18 U.S.C. Sec.
> 3663A(c)(1)(limited to offenses committed on
> or after April 24, 1996); and the Court may
> order the defendant to make restitution to
> any victim of the offense, pursuant to 18
> U.S.C. Sec. 3663 (limited to offenses
> committed on or after November 1, 1987) or
> Sec. 3579, including restitution as to all
> counts charged, whether or not the defendant
> enters a plea of guilty to such counts, and
> whether or not such counts are dismissed
> pursuant to this agreement.  On each count to
> which a plea of guilty is entered, the Court
> shall impose a special assessment, to be
> payable to the Clerk's Office, United States
> District Court, and due on date of
> sentencing.  The defendant understands that
> this agreement imposes no limitation as to
> fine.

**STIPULATED FACTS**

4.  The Court includes the parties and Movants' Stipulated Facts (Dkt. 131-2):

A.  Beginning in 2004, Coast Bank of Florida (Coast), a handful of builders but primarily Construction Compliance, Inc. (CCI), and American Mortgage Link (AML), participated in a program that offered qualified borrowers (primarily investors) their choice of a limited number of model homes to be built on specific lots (lot-house packages) at a fixed price of 90 percent of appraised value with no money down at closing.

B.  Coast, as well aa other builders, participated in the program by providing 100 percent of the financing for the purchase, that is, 100 percent of 90 percent of appraised value of the lot-house packages.

C.  AML, of which John Robert Miller served as president, acted as a broker, obtaining loan commitments from Coast.  The borrowers entered into mortgage brokerage fee agreements with AML.

D.  To acquire a place in the program, AML initially proposed to charge a loan origination fee of one percent.

E.  It was anticipated that the construction loans would be converted to "permanent loans" at the time occupancy certificates were tendered.

F.   To qualify for financing, a prospective borrower was required to have a certain minimum credit score, verified assets of a specific amount, and verified employment or self-employment for a stated period of time.  Applicants for loans were permitted to state their income.

G.   CCI and Enchanted Homes, among others, agreed to sell the lot-home packages for 90 percent of appraised value.

H.   The builders in their construction contracts with the borrowers agreed to pay closing costs as well as interest during the construction period.  Per the borrowers' loan agreements with Coast Bank, the borrowers maintained full responsibility to repay the full amount of the loan funds disbursed including the loan funds disbursed at closing.

I.   At closing, each builder received the price of the lot as calculated by the builder as well as a percentage of the overall construction costs.

J.   In lieu of the builders delivering funds at closing to pay the closing costs, the proceeds due the builders out of the first loan disbursement at closing were reduced by the amount of the closing costs.

K.   Consistent with the concept of the program, borrowers paid no money at closing.

L.   12.   Philip William Coon, Executive Vice President of mortgage lending for Coast, approached Mr. Miller with a plan to charge the borrowers a loan origination fee that was one percent

higher than AML intended to charge. Part of the plan proposed to Mr. Miller by Mr. Coon was that 75 percent of the proceeds of the additional point charged by AML be paid to Mr. Coon. Mr. Miller agreed.

M. The amount of the loan origination fee was disclosed and agreed to by all interested parties and was within the market range of fees for investment properties.

N. Mr. Miller paid Mr. Coon 75 percent of the proceeds of the additional point charged by AML. Those payments made by Mr. Miller to Mr. Coon were the basis of the Government charging that Coast was deprived of its intangible right to the honest services of its employee, Mr. Coon.

O. Many of the houses under the program were never completed. CCI declared bankruptcy in February of 2007, defaulting on a number of home construction contracts.

P. On August 12, 2008, Mr. Miller was charged with conspiracy to commit wire fraud and, thereby, to deprive Coast Bank of the intangible right to honest services, in violation of 18 U.S.C. Secs. 1343 and 1346, and 18 U.S.C. Sec. 371. Mr. Miller pleaded guilty pursuant to a plea agreement.

Q. On October 15, 2008, Mr. Coon was charged with conspiracy to commit (1) wire fraud and, thereby, to deprive Coast Bank of the intangible right to honest services, in violation of 18 U.S.C. Secs. 1343 and 1346, and (2) money laundering, in violation of 18 U.S.C. Sec. 1957, all in violation of 18 U.S.C. Sec. 371. Mr. Coon pleaded guilty pursuant to a

plea agreement. Mr. Coon's case, case number 8:08-CR-441-T-17MAP, is assigned to the Honorable Elizabeth A. Kovachevich.

The Court intentionally omits the final two stipulated facts, which involve Movants' actions taken to assert Movants' CVRA rights after this case was filed, and which are not relevant to the issue the Court must now determine.

5. Defendant Coon testified as to how the loan program worked (Dkt. 194, p. 67, l. 3-19). Defendant Coon testified that the price of each lot-house package was determined by an appraisal (Dkt. 194, p. 143, l. 17-l. 22). Defendant Coon further testified that the contracts were fixed price contracts, not cost plus contracts. (Dkt. 194, p. 143, l. 23-p. 144, l. 9).

6. John Robert Miller testified that the contracts were fixed price contracts, and the amount of the loan origination fee did not change any other aspect of the program. (Dkt. 194, p. 188, l. 9-p. 190, l. 20. Mr. Miller denied that he ever provided the contract prices to the appraiser in advance. (Dkt. 194, p. 200, l. 9-17).

7. The Government's expert witness, Edward Peters, a certified residential appraiser, testified that he began doing appraisals for American Mortgage Link in 2000 or 2001. (Dkt. 195, p. 247, l. 8-11). Edward Peters further testified that he performed appraisals on homes constructed by CCI and financed by Coast Bank in 2005. (Dkt. 195, p. 247, l. 19-p. 248, l. 5). Edward Peters further testified as to the methodology for the appraisals he conduct in 2005 and 2006 (Dkt. 195, p. 248, l. 22-p. 257, l. 7). Edward Peters testified that the amount of

closing costs did not affect his appraisal (Dkt. 195, p. 250, l. 8-17) and the contract sales price did not affect his appraisal (Dkt. 195, p. 252, l. 6-8). Edward Peters denied entering into any agreement with Defendant Coon to produce an inflated appraisal. (Dkt. 197, p. 59, l. 20-p. 60, l. 2).

8. Movants' expert witness, Dennis Black, testified that, in his opinion, the appraisals of the lot-house packages were not accurate and were inflated (Dkt. 200, p. 44, l. 19-p. 65, l. 16). Dennis Black further testified that the appraisals were inflated by more than one percent of the purchase price of the lot-house packages. (Dkt. 200, p. 76, l. 13-18).

9. Movants' expert witness, Clifford King, testified that he heard no evidence that the prices charged to the borrowers, and therefore the loan amounts, were increased by one percent to take into account the increased loan origination fee that was charged and paid to Defendant Coon pursuant to Defendant Coon's agreement with Mr. Miller. (Dkt. 200, p. 173, l. 19-p. 174, l. 1).

10. As stipulated, upon the closing of each loan, the builder became entitled to a draw for the purchase price of the lot and a percentage of the construction costs. The builder was contractually obligated to pay for the closing costs of each loan. Rather than pay for the closing costs of each loan with a separate check, the builder elected to pay for the closing costs of each loan from the draw due to the builder at the time of closing. The Court notes that CCI used the above method to pay for the closing costs for each transaction.

11. Trish Miller, an independent closing agent, testified that the closing instructions from the lender provided that the builder was responsible for payment of the closing costs (Dkt. 195, p.165, l. 8-14). Mary O'Grady, an independent closing agent, also testified that the builder was responsible for payment of the closing costs. (Dkt. 195, p. 193, l. 11-24).

12. Nikki Farr of Coast Bank testified that Coast Bank calculated the amount of the initial disbursement of loan proceeds due to the builder at closing based upon a pre-determined, fixed amount of closing costs, not the actual amount of the closing costs in a particular transaction. (Dkt. 195, p. 135, l. 16-19).

13. The Government's expert witness, Derek Houston, testified that a change in the amount of closing costs could not affect the purchase price or initial draw to the builder. (Dkt. 197, p. 105, l. 9-p. 110, l. 12).

## CAUSATION

### "But For" Causation

14. The closing costs for each transaction were not included in the loans obtained by Movants. (Govt. Exh. 2D).

15. As stipulated, Movants' contracts with the builder/seller required the builder/seller to pay all of the closing costs on the transaction.

16. The amount of the closing costs included in the initial draw payable to the builder was set as a fixed amount at the

19

draw payable to the builder was set as a fixed amount at the beginning of the program. The additional point did not impact the amount or manner of disbursement of each Movant's loan. If the closing costs for each loan had been reduced, the total amount of each construction loan would not have changed.

## PROXIMATE CAUSATION

17. The additional point charged by John Robert Miller did not cause any pecuniary harm to any borrowers on the day of closing because they paid no money at closing and the additional point was paid out of the seller's proceeds after the closing pursuant to the seller's contract with the borrowers.

18. The additional point charged by John Robert Miller did not cause any pecuniary harm to any borrowers as the borrowers repaid their loans because the additional point did not affect the amount of the loan. This is because the purchase price of the lot-house package was based on 90% of its appraised value, and the loan amount was 100% of the purchase price. Any deficiencies in the appraisals did not cause the additional point to affect the purchase price or loan amount, because the purchase price was based on the appraisal.

19. The additional point charged by John Robert Miller did not cause any pecuniary harm to any borrowers as the borrowers repaid their loans because the additional point did not affect the manner in which the loan was disbursed. This is because the allowance for closing costs in the initial draw was set as a fixed amount at the outset of the program prior to the change in the amount of points, and did not vary based on the amount of the

20

actual closing costs.

20. With or without the additional point caused by the offense, the amount of money the borrowers were obligated to repay to Coast Bank would have been identical.

21. At the beginning of the "no money down" "90 percent of appraised value" program, some homes were completed and sold for a profit, including homes completed by Construction Compliance, Inc. No borrower suffered a pecuniary loss as a result of those transactions.

22. Some builders completed all of the homes they contracted to build under the program. No borrower suffered any pecuniary loss as a result of any of those transactions.

23. Construction Compliance, Inc., the builder for many of Movants' homes, declared bankruptcy in 2007. CCI did not complete construction of some of Movants' homes. Jesse Battle, III, testified that CCI owed almost $11 million when CCI declared bankruptcy, including $6 million owed to its subcontractors. Movants may have suffered pecuniary losses as a result of CCI's failure and defaults. (Dkt. 194, p. 140; Dkt. 195, p. 88).

24. Movants have argued that, because CCI paid increased costs for Defendant Coon's conduct, Movants' loans were starved for funds needed for construction. Movants therefore admit that in fact CCI paid the closing costs for Movants' loans. (Dkt. 200, p. 168, l. 1-4).

25. Jesse Battle, III, testified that permitting delays and

associated interest expenses, a shortage of qualified subcontractors, the crash of the Florida real estate market, hurricanes, the increased cost of labor and construction, and the efforts of some investors to delay closings contributed to CCI's bankruptcy. (Dkt. 194, pp. 282-85; Dkt. 195, pp. 8-11, 16).

26.  Jesse Battle, III testified that he diverted funds from Construction Compliance, Inc. by purchasing a commercial office building, real estate in North Carolina, a trailer park, and more than $20 million from CCI to his related company, CCI Land (Dkt. 195, pp. 85, 116-18).

27.  The additional point paid by CCI as a result of Defendant Coon's offense was not a "but for" cause of CCI's bankruptcy and liquidation.  There is no reasonable likelihood that Movants' losses flowing from CCI's failure would not have occurred if Defendant Coon had not asked Mr. Miller to charge an additional point in the closing costs.

28.  The additional point was not a proximate cause of any of Movants' losses flowing from CCI's failure.  Those losses are temporally and factually attenuated from Defendant Coon's offense, and were brought about by the intervening and superceding causes noted above (pars. 25, 26).  There is no evidence in the record that establishes that the intervening causes were directly related to the offense conduct.

III. CONCLUSIONS OF LAW

1.  The Court has "no inherent authority to order restitution, and may do so only as explicitly empowered by

22

statute." <u>United States v. Hensley</u>, 91 F.3d 274, 276 (1st Cir. 1996).

2. The wire fraud statute, 18 U.S.C. Sec. 1343, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both.

3. The Information (Dkt. 1) alleges that from late 2004 through January 17, 2007, Defendant Coon conspired to commit wire fraud and money laundering. The Information identifies the manner and means of the conspiracy (Dkt. 1, pars. 6-15) and the overt acts committed in furtherance of the conspiracy (Dkt. 1, pars. 16(a)-(d). The Information further alleges that Defendant Coon shall forfeit to the United States of America property identified in pars. 2(a)-(i), which includes a forfeiture money judgment in the amount of $1,528,616.46.

4. The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. Sec. 3663A, obligates the Court to order restitution in cases which involve certain offenses, including offenses against property committed by fraud and deceit, such as conspiracy to commit wire fraud.

5.    18 U.S.C. Sec. 3664, Procedure for issuance and enforcement of order of restitution, requires the Court to "order restitution in the full amount of each victim's losses and without consideration of the economic circumstances of the defendant."   18 U.S.C. Sec. 3664(f)(1)(A).

6.    18 U.S.C. Sec. 3663A provides:

> **(a)(1)**    Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

> **(2)** For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

> **(3)** The court shall also order, if agreed to by the parties in a plea agreement,

24

> restitution to persons other than the victim of the offense.
>
> . . . .
>
> **(c)(1)** This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense--
>
> **(A)** that is--
> . . . .
>
> **(ii)** an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;
>
> . . . .
>
> **(B)** in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

7.  In <u>U.S. v. Dickerson</u>, 370 F.3d 1330 (11th Cir. 2004), the Eleventh Circuit Court of Appeals considered the appropriate award of restitution for scheme-based offenses. In <u>Dickerson</u>, a case involving a defendant who pled guilty to 36 counts of wire fraud and one count of Social Security fraud, at sentencing the defendant was ordered to pay restitution for the entire scheme, including the part of the scheme for which the defendant was not charged. The defendant was ordered to pay restitution for the charged offenses and any relevant conduct. The defendant objected to the amount of restitution for conduct which took place in the time period which was beyond the statute of limitations. On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's restitution order, and explained in detail the appropriate analysis for scheme-based offenses to which 18 U.S.C. Sec. 3663A applies.